RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 3/3/14

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| HENRY KIMBALL | CIVIL ACTION NO. 10-688 |
| VERSUS | JUDGE TRIMBLE |
| CAPTAIN TISER, ET AL. | MAGISTRATE JUDGE KIRK |

### MEMORANDUM RULING

The above-captioned matter was tried before the undersigned on Monday, January 27, 2014. Plaintiff, acting pro se, and defendants, represented by the Louisiana Attorney General's office, were present. Plaintiff and defendants presented argument and evidence in this matter and, after careful consideration of same, it is the finding of this court that plaintiff's claims against defendants should be DENIED and DISMISSED with prejudice for the reasons explained below.

I.   **Relevant Facts**

Plaintiff Henry Kimball filed the instant civil rights suit against defendants Captain Tiser,[1] EMT Duplechain, Major Beau Milligan, Blaine Lachney, Warden Clyde Benson, Colonel Blaine Villamerette, Lt. Colonel Kent Gremillion and Lt. Rene Holt in April of 2010.[2] Plaintiff claims that he was subjected to excessive force amounting to cruel and unusual punishment on or about September 17, 2009 while incarcerated at Avoyelles Correctional Center ("ACC") in Cottonport, Louisiana. Specifically, plaintiff asserts that defendant Tiser sprayed him in the face

---

[1] Now promoted to rank of Lt. Col.
[2] Original complaint at R. 1; First amending and supplemental complaint at R. 12; Second amending and supplemental complaint at R. 17; Third amending and supplemental complaint at R. 19. Although plaintiff's various complaints named a variety of other defendants at various times, many claims were dismissed, leaving only claims against the above-named defendants for trial.

1

with chemical agent while plaintiff was confined to his cell in contravention of prison policy.[3] Plaintiff further asserts that he was extracted from his cell by a tactical team and escorted to the shower cell, where defendant Gremillion hit him in the back of the head with a can of chemical agent and members of the tactical team assaulted and battered him.[4] Plaintiff alleges that defendant Duplechain, an emergency medical technician ("EMT") visited him in the shower cell, but refused to record his complaints of injury to his head and ribs.[5] Plaintiff asserts that he was never provided medical care for the injuries to his head and ribs from this alleged incident, though he repeatedly made requests for medical treatment.[6]

## II. Plaintiff's Claims

### A. Eighth Amendment Excessive Force Claims

Plaintiff asserts that the conduct of defendants on the date in question violated his civil rights under the Eighth Amendment's prohibition of cruel and unusual punishment, which encompasses the use of excessive force against prisoners by prison officials.[7] In order for plaintiff to establish a successful Eighth Amendment excessive force claim, he must demonstrate: (1) that force was applied maliciously and sadistically in order to cause harm, rather than in a good faith effort to maintain or restore order and discipline; and (2) a resulting injury.[8]

---

[3] R. 17 at p. 3.
[4] Id. at pp. 5-6.
[5] Id. at p. 7.
[6] R. 19 at p.
[7] Whitley v. Albers, 475 U.S. 312, 319 (1986) quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (finding that the Eighth Amendment forbids cruel and unusual punishment, including "the unnecessary and wanton infliction of pain").
[8] Hudson v. McMillian, 503 U.S. 1 (1992); Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

Plaintiff bears the burden of proof as to both elements of his excessive force claim by a preponderance of the evidence. Whether or not excessive force was used is a fact inquiry to be decided by the trier of fact.[9]

The court finds that plaintiff failed, at trial, to demonstrate by a preponderance of the evidence that force was used against him which was disproportionate to the prison's lawful goal of restoring order or discipline or that he suffered any injury as a result of such force. The court received conflicting testimony from plaintiff and his two witnesses regarding the events of September 17, 2009 and we note that all of these versions of the alleged abuse to plaintiff differ significantly from plaintiff's narrative complaint. To the contrary, the video evidence and the testimony of defendants Tiser, Villamerette, Holt, Milligan, Gremillion and Duplechain are in accord, showing no violence of the sort alleged by plaintiff in this case.

Lt. Col. Tiser testified that he heard plaintiff making a disturbance by yelling, cursing and racking or shaking the bars to his cell and responded by going to plaintiff's cell and giving him a verbal order to stop those behaviors, which plaintiff refused. Tiser testified that he reported this to his supervisor, who gave him permission to use chemical agent on plaintiff if needed. Tiser affirmed that he checked the "special needs list," in order to see whether special mental health procedures were applicable to plaintiff and, finding that plaintiff was not included in that list, returned to plaintiff's cell and explained that he would use chemical agent on plaintiff if he refused to comply with Tiser's orders.[10] Tiser testified that he again ordered plaintiff to assume the position for restraint, to which plaintiff responded with profanity and did not comply. Tiser

---

[9] Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998) (internal citations omitted).
[10] Plaintiff argued vigorously at trial that he should have been included in the special needs list and that his social worker should have been called to the scene prior to any action being taken against him. Plaintiff offered no support for this argument, except his own assertion that he is a mental health patient who should be on that list. Assuming that plaintiff's argument is true, the failure of the prison, in this particular instance, to include him on such list, is not actionable, given plaintiff's failure of proof as to the elements of his constitutional claims. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (internal citations omitted).

3

then testified that he sprayed a "minimal amount" of chemical agent into plaintiff's cell, but not in plaintiff's face, in accordance with ACC policy. Tiser stated that he waited about 5 minutes and then returned to plaintiff's cell and again ordered him to come forward to be restrained and, upon plaintiff's noncompliance, administered a second dose of chemical agent, again in accordance with ACC policy. Tiser denied plaintiff's allegations that he returned a second time with several more cans of chemical agent and continued to spray plaintiff in the face and body.

Tiser testified that, after administering the second dose of chemical agent, he notified his supervisor and a cell extraction team was formed. Tiser stated that, once the cell extraction team arrived, he was required to leave the tier and, for that reason, did not witness the cell extraction.

Testimony offered by defendants Holt, Milligan and Gremillion denied that any force was used on plaintiff after the cell extraction team arrived at plaintiff's cell. Milligan testified that, once the cell extraction team arrived, plaintiff complied with orders to come forward and be restrained and was escorted to the shower without incident. Milligan further testified that plaintiff refused a shower and was returned to his cell without incident. Milligan denied assaulting plaintiff. Defendant Gremillion's testimony similarly denied any violent force used on plaintiff by himself or any other member of the cell extraction team. Defendant Holt testified that the purpose of the video is to film the cell extraction and, once the inmate is extracted from his cell and transported, the extraction is considered "complete," and that is the reason no further video is taken of the incident.

Plaintiff testified that he was upset on the day in question because he had been informed that he would be placed in administrative segregation as punishment for engaging in a fight with another inmate at ACC. Plaintiff affirmed that he was yelling and cursing, but denied that he was racking the bars. Plaintiff testified that Lt. Col. Tiser approached his cell and ordered him to

4

come forward to be restrained and, as he complied with this order, Tiser began spraying him in the face and body with chemical agent for no reason. Plaintiff further testified that Tiser left the tier and returned with several more cans of chemical agent and resumed spraying plaintiff in the face and body, again, for no reason.

Plaintiff offered the testimony of two inmate witnesses. Ray Shaun Christmas testified that, using a toothbrush with a mirror affixed to it, he was able to observe Lt. Col. Tiser spray plaintiff with two (2) cans of chemical agent, despite plaintiff complying with Tiser's order to put his hands outside the bars to be restrained. Christmas added that Tiser left the tier and returned a second time with two (2) more cans of chemical agent and continued to spray plaintiff before calling the cell extraction team. Christmas stated that the cell extraction team entered plaintiff's cell and beat him prior to Sergeant Holt's arrival on the tier with the camera. Christmas testified that the tactical team followed plaintiff into the shower and, once the camera was turned off, the cell extraction team kicked and punched plaintiff.

Kelton Ray, plaintiff's second witness, testified that he was also able to observe the events in question using a toothbrush outfitted with a mirror. Ray testified that Lt. Col. Tiser approached plaintiff's cell and told him to come forward to be restrained and, even though plaintiff complied with such order, Tiser sprayed him with a can of chemical agent. Ray recalled that Tiser then left the tier and returned a second time and sprayed chemical agent into plaintiff's cell for no reason despite plaintiff's pleas for his social worker, Melissa Broussard. Ray testified that he was taken off of the tier at that time because he has asthma, but then testified that he was able to observe plaintiff being beaten in his cell and in the shower by the cell extraction team. Ray recalled that Sergeant Holt held the camera down by her side as plaintiff was being beaten, indicating that she was not filming those portions of the events at issue. Ray added that,

immediately after plaintiff was returned to his cell, a shift change occurred and Captain Clark, part of the new shift team, entered plaintiff's cell and began hitting plaintiff.

The court viewed the video evidence filmed by defendant Holt.[11] It begins with an unnamed member of the cell extraction team describing the scene, which is that plaintiff refused to comply with orders and, for that reason, is going to be extracted from his cell. Plaintiff is heard denying that he failed to comply with orders. A second member of the cell extraction team orders plaintiff to come to the bars and be restrained and plaintiff complies immediately and restraints are placed upon his wrists and ankles. Plaintiff's cell door is opened and a member of the cell extraction team stops plaintiff from his movements and instructs plaintiff to "relax" and explains that he will instruct plaintiff as to when to move. The video then shows plaintiff being escorted down the tier to the shower cell without incident. Plaintiff is placed in the shower cell and the door to that cell is locked behind him. Plaintiff is asked whether or not he now wishes to have a shower and plaintiff again refuses a shower. Defendant Holt is heard asking, "is that it?" The tape ends at that time.

Considering all of the testimony described above and the video evidence presented at trial, the court finds that plaintiff failed to carry his evidentiary burden regarding his excessive force claim. Plaintiff's testimony at trial differed substantially from the narrative of events in plaintiff's amended complaint and from that offered by his inmate witnesses. In contrast, the testimony of the defendant prison officials and the video evidence were in accord, demonstrating the absence of violence toward plaintiff. The court notes, particularly, that the video shows plaintiff in his cell at the time of the arrival of the cell extraction team. Contrary to plaintiff's narrative complaint and his trial testimony, plaintiff appears to be breathing normally, standing

---

[11] Defense Exhibit 3.

upright, not lying in his own vomit and not in respiratory distress.[12] We also note that plaintiff admits that he was causing a disturbance by yelling and cursing, though he denies racking the bars. Defendants offered the "Chemical Agent Inventory" establishing the amounts of chemical agent deployed to plaintiff's cell by Lt. Col. Tiser, which show two applications of chemical agent in the amounts of 1.0 oz. and 1.2 oz. from a single can (noted as "Can # A2") on the date in question.[13] Plaintiff offered no evidence rebutting the validity of this document. Similarly, though plaintiff and his witnesses testified that the video failed to show all of the incident, purposefully omitting the portions where plaintiff was assaulted, plaintiff and his witness' own unsubstantiated assertions regarding video tampering are plaintiff's only support for such argument. Finally, the court as fact-finder in this case did not find the testimony of plaintiff and his inmate witnesses, all convicted of serious crimes and serving lengthy sentences thereon, to be worthy of credence. The court found the narratives given in the case, particularly by inmate Christmas, to give the impression of being wildly embellished, exceeding even plaintiff's ever-growing claims of excessive force.

Regarding the second element of plaintiff's excessive force claim – injury – the court finds that plaintiff presented no evidence of any injury in this matter, outside his own self-serving testimony, as will be more fully discussed in conjunction with plaintiff's deliberate indifference claim below.

Given these findings, the court determines that the preponderance of the evidence presented at trial supports defendants' version of events and fails to show the excessive force claimed by plaintiff in this matter. Accordingly, plaintiff's Eighth Amendment excessive force

---

[12] R. 19 at pp. 4-5 of 8. The court notes that plaintiff's complaint contains allegations of five (5) separate administrations of chemical agent, numerous additional beatings, mockery and, again, that plaintiff was left lying in his own vomit, totally incapacitated after Lt. Col. Tiser's alleged repeated and voluminous applications of chemical agent to plaintiff's face and body.
[13] Defense exhibit 1.

claim will be denied and dismissed with prejudice as to all defendants. We note that this ruling applies equally to defendants Lachney, Benson and Villamerette, as to whom plaintiff offered no evidence in this matter.[14]

### B. Plaintiff's Eighth Amendment Deliberate Indifference Claims

Plaintiff's complaint asserts that, following alleged excessive force by defendants, he was denied adequate medical care by EMT Duplechain and Warden Benson and has never received treatment for the injuries he sustained during the incident forming the basis for this suit. As referenced above, plaintiff alleges that EMT Duplechain refused to document the injuries to plaintiff's head and ribs, though plaintiff complained of them and asked him for treatment of same.

The Eighth Amendment provides that conditions of confinement in prisons must not involve the "wanton infliction of unnecessary pain."[15] To prevail on an Eighth Amendment claim asserting the deprivation of adequate medical care, plaintiff must show that the officials at issue were "deliberately indifferent" to plaintiff's serious medical need by showing: "(1) defendants were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) that defendants actually drew an inference that the potential for harm existed."[16]

Plaintiff's complaint alleges that, once he was returned to his cell, he was subjected to further physical abuse. The complaint further alleges that approximately one (1) hour passed

---

[14] To the extent that plaintiff's claims against defendants Lachney and Benson are premised on supervisory liability under 42 U.S.C. § 1983, such claims are not cognizable under the theory of respondeat superior. Rather, plaintiff must have offered evidence of these defendants' enactment of policies or procedures which resulted in the violation of his constitutional rights. Mouille v. City of Live Oak, TX, 977 F.2d 924 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).
[15] Palmer v. Johnson, 193 F.3d 346, 351-52 (5th Cir. 1999) quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981) and Farmer v. Brennan, 511 U.S. 825, 832 (1994).
[16] Farmer, 511 U.S. at 834.

before EMT Duplechain arrived in his cell, but refused to document his "apparent injuries."[17] Plaintiff's complaint asserts that, because Duplechain didn't document his injuries, he has never been able to get medical treatment for the "constant pain in his lower back and ribs, which has also caused me difficulty breathing."[18]

At trial, plaintiff testified that EMT Duplechain arrived at the shower cell approximately ten (10) minutes after the cell extraction team ceased beating him in the shower. Plaintiff testified that he explained his injuries to Duplechain at that time, but that Duplechain refused to document his injuries and, instead, wrote on the sick call form that plaintiff refused treatment. As above, plaintiff's narrative complaint and trial testimony differ.

EMT Duplechain also testified at trial and refuted plaintiff's allegations, recalling that plaintiff reported no injury and refused any medical treatment. Duplechain testified that he observed no injuries to plaintiff's head or ribs upon examining plaintiff. Colonel Gremillion corroborated Duplechain's testimony, explaining that it is standard procedure to have medical personnel examine an inmate following a cell extraction, but that plaintiff denied injury and refused treatment. Defendants' Exhibit 5, a "Refusal to Accept Medical Care" form dated September 17, 2009, notes that plaintiff refused to sign and that chemical agent was used upon him, but no visible trauma or respiratory distress is apparent.[19]

Plaintiff offered number of yellow duplicates entitled "Request for Medical Treatment" dated from October 11, 2009 through approximately December 12, 2010.[20] Plaintiff testified that these forms evidence his quest to obtain treatment for the injuries received by defendants on the date at issue in this case. The court finds no support for plaintiff's case in these documents,

---

[17] R. 19 at p. 5 of 8.
[18] Id.
[19] Defendants' Exhibit 5 at p. 1.
[20] Plaintiff submitted these under an offer of proof.

which contain no information regarding the reason medical treatment was requested on these dates, merely listing plaintiff's name and Department of Corrections number, the date treatment was sought and the charge for treatment.

Plaintiff also offered a copy of his medical records in support of his claim of serious medical need, which the court has carefully reviewed.[21] Plaintiff was seen by medical staff for the first time following September 17, 2009 on September 19, 2009. The provider's notes state that plaintiff informed her of the fight he was involved in and reference plaintiff's "EPS," which the court understands to mean "extrapyramidal symptoms" associated with the use of antipsychotic drugs. Significantly, these records do not reference injuries allegedly received during the incident at issue. Instead, plaintiff's complaints seem centered around two other issues: a perceived penile infection and high blood pressure.

Medical records offered by defendants show that plaintiff was involved in another incident in which the "tactical team[,]" intervened on October 3, 2010.[22] Physician notes dated October 26, 2014 show that plaintiff complained of rib pain caused by a "tactical team takedown."[23] The court finds that these records do not evidence the alleged injury forming the basis of this suit, but, instead, seem to relate to a later altercation not associated with the events of this matter.

Plaintiff offered no testimony, except his own, corroborating his claims of injury and no documentary evidence of any injury allegedly caused by defendants on September 17, 2009. For that reason, the court finds that plaintiff's medical care deprivation claim fails, as plaintiff cannot show a serious medical need to which any defendant was deliberately indifferent.

---

[21] Plaintiff's Exhibit 1 in globo.
[22] Defendants' Exhibit 6.
[23] Id.

For the reasons expressed above, it is the finding of this court that plaintiff failed at trial to support his two (2) Eighth Amendment claims by a preponderance of the evidence and, for that reason, both such claims should be DENIED and DISMISSED with prejudice. The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
March 3, 2014

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE